May it please the Court, Cal Potter, on behalf of Andre Reed. The Court is familiar with the facts of this case. I'd like to focus on the issue of why the Court erred in finding that there was an emergency or exigent circumstance concerning the issue about this domestic battery or possible domestic battery. We have a situation here where Mr. Reed exits his vehicle, locks his door, and proceeds to go to a casino at the Texas Station Casino in Las Vegas. It's a situation where I believe that there is a reasonable expectation in locking his vehicle that he would have the right and privacy. The officers stopping him at that point in time are dealing with the situation of what part of one officer saying that he made an illegal turn going into the casino or, on the other side, another off-duty officer having told them on one occasion that he believed that there may have been a woman in the vehicle and that she possibly could have been assaulted, although it's not clear based upon the fact that the vehicle has tented windows at the time that the officers actually make the stop. However, the off-duty officer who is calling in this call apparently has the ability to see into the vehicle in making the observations. In any event, what occurs then is the situation during the stop of either traffic or for the possible domestic. Mr. Reed says that there is no one in the vehicle, and I would submit that that's really what set the police officers off on this wild goose chase as such. Did your client properly identify himself? Yes, he did, Your Honor. He gave his true and correct name? Yes, sir. So if the officer at that point had called in for criminal history information, he would have determined that your client was, in fact, a felon? He would have, Your Honor. And at or around that point in time, your client indicated there was a weapon in the car? Your Honor, he did, and that was pursuant to the questioning that was going on after, in fact, there was one officer asking whether, in fact, somebody is in the vehicle trying to look at the domestic violence or possible domestic violence situation. Our position in this case is that's where the questioning should have stopped. They then went into the car, unlocked the car, and went into the vehicle, arguably because they couldn't see in through these tinted windows, although through the windshield there was a different situation. I believe that the testimony was that they could see into the windshield, but they wanted to make sure that no one was in the vehicle. Let's suppose that one or both of these officers were going to night law school, and they just studied constitutional law, and immediately upon learning the individual's name and determining that he was, in fact, a felon, had called their con law professor to get guidance as to what to do, could they have frozen the situation and obtained a warrant? Well, certainly it was a situation, even assuming that they were looking at it. You start with a yes or no? Well, I believe they could have frozen at that time and asked for a warrant. Okay. So why doesn't the doctrine of inevitable discovery apply? Because in this particular situation, Your Honor, the intent was to find out whether, in fact, an individual was injured in the vehicle. Once they opened the vehicle, unlocked it, they made a determination there was no one in the vehicle. The officer that had been giving the information apparently was incorrect or wrong or had lied about what had taken place. But what's important, Your Honor, is that then it's bootstrapped in. The officer says, well, he looked into the back seat and saw a case, and the case was a CD case, and so then the argument is he had to look into the case. But clearly what they were looking for was an individual that may have been injured, and what they were trying to do was apply the emergency doctrine for domestic violence that these types of situations could have found an individual that was injured. I'm just my questions are designed at wondering why worry about emergency situation or officer safety if, in fact, the individual properly identified himself. He was, in fact, a felon and admitted that there was a weapon in the car. Why wouldn't inevitable discovery, either by way of a warrant or an arrest, proper search pursuant to an arrest have yielded the weapon? Because the weapon wasn't found at that time when they went in and looked into the car, Your Honor. But he told them it was in the car. Well, and that's correct, Your Honor, and what the argument that was made originally in this, it was a traffic stop or a possible domestic violence. But when you have a situation where, in fact, the officer makes a determination that he's going to ask further questioning, whether the questioning should be limited. And we recognize that the court did change from the Mendez opinion that was written. But I think what's important, even looking at the original Mendez dissent by Judge Tallman, was his looking at this is basically a Terry stop in a vehicle. And that there had to be some type of showing that, in fact, there was some danger related to this. And I think it's a situation where, if he's being stopped to make a determination, what you're saying is it's permissible to ask what this officer believed to be standard questions. And I would submit to you that it wasn't a standard question, that it became a fishing expedition, that he still had a reasonable expectation. Once he made his identification, it was thrown out on the hood, and they had a right to make some type of determination. He was cooperating. There wasn't any need for further questioning. That was the argument that was made initially, that deals with what you're talking about in terms of inevitable discovery, that the questioning should be limited to the facts of what had taken place here. We know the facts were either a improper left-hand turn, and then he turned into the casino, which was then brought up after the fact that they were trying to make a stop for domestic violence and turned out to be- My impression is the way the questioning went was, is there anyone in the car? And the response was, no, but there is a weapon. No, that's not what the transcript showed. How did that transpire? Well, I believe what takes place is, Your Honor, they're making the stop, trying to find out if, in fact, there was somebody in the vehicle, whether there was a person that may have been injured. And then the officer said, then he went to his further question of his standard questions, is there a weapon in the vehicle? And that's the point in time where it changes from an investigation as to either the traffic stop or as to whether, in fact, there's an injured person. Well, is that a question that can't be asked? That's our argument, that the questioning should be related to the stop. In this instance, the officer went back from his domestic violence stop and said that he was actually stopping because of a traffic or because they turned, but maybe they had probable cause to make a traffic stop. I would submit to the court that there was an expectation on the part of Mr. Reed, based upon the fact that he got out of his car, locked the door, checked the door, and was leaving at that point in time, that the stop should not, or the search should not have continued. How does that explain why the officer can't ask, during a stop, for whatever reason, is there a firearm in the car? Do you have a firearm? That sounds to me like a question that doesn't come out of the blue. There's an officer safety concern. What precludes the officer from asking that question? Because your client's not in custody at that time. He's not compelled to respond. Once he says yes, well, okay, the firearm's kind of on the table. But why can't the officer ask the question? Because the testimony at that point in time was that, in fact, he was not going to be able to leave. Both officers were asked that during the suppression hearing, whether, in fact, he would have been able to leave at that point in time. They both said that he would not have been able to leave at that point in time. The court went on then to suppress, based upon the fact of the statements that were being made, the fact that he was in custody. And I think there's a divergence between the magistrate's vision of what actually takes place in terms of the search and then his suppressing of the statements made by Mr. Reed when, in fact, he was not allowed to leave and he's considered being custodial and subject to Miranda warnings at that point in time. I would like to reserve whatever time I might have. Certainly. Thank you for your argument.  Mr. Quarles? Good morning, Mayor, police, the court. Brian Quarles for the United States in this case. The district court properly denied appellant's motion to suppress the handgun recovered from his car because the police had both reasonable suspicion and probable cause to stop appellant's car and investigate whether he had battered the female. The record evidence strongly supports that the police had reasonable suspicion for the stop. After all, the police were responding to a domestic violence call. This court has long recognized that domestic violence calls are inherently dangerous. Here, an off-duty police officer reported to the police that they saw appellant argue with the female, point his finger in her face, and possibly shove her. The police reasonably relied on this information as reliable and credible because it was being conveyed by an off-duty police officer. But once the police had determined that there was no one in the car, what justified the additional search? Well, that, your reasonable, I grant you your reasonable suspicion to stop. But then at some point, the character of the search may have changed. They were not looking for anyone, any person in the cassette box. They weren't, Your Honor. I think an important fact to be mindful of is the fact that appellant's car had darkly tinted windows. So even if appellant reported to the police that there was no one inside, the police were not in a position to independently verify and confirm that there was not an injured victim. Right, but once they had obtained, they looked in the car and no one was there, what justified the further search? Your Honor, I think also there's officer safety involved because appellant admitted that he had a weapon in the car. And again, based on the suspicious nature of his conduct, he failed to pull over immediately. Once he did get out of his car, he locked the car door. And in fact, he verified he locked the car door by pulling the door handle. But I think even more importantly than that, let's assume for sake of argument that- How would it impact officer safety if the gun is in a locked car? Well, the officers aren't aware of that, Your Honor. But I would take it a step further, is that even if for some reason they had no basis to search the car at that point, then subsequently they still could have recovered the weapon during the doctrine of inevitable discovery, because they certainly at that point recognized that appellant admitted that he was in fact a felon. So at some point down the road, whether at that point or later- Well, he said he'd been arrested. He didn't say he was a felon, did he? That's true, Your Honor. But certainly a routine records check revealed that, in fact, the appellant was a felon. But it wasn't at the time when they searched the car. I grant you, if they'd done a records check and they discovered he was a felon and he said he had a firearm, you'd have no problem. But at this point, subjectively, they didn't know that. That's true, Your Honor. How does that make a difference? I say it doesn't make a difference, because they were – they recognized that he had been arrested. They would have performed a records check, as they did. So they may have learned that he was a felon later. That still would not have negated the fact that they would have recovered the firearm through an arrest warrant or after they impounded the vehicle and discovered the weapon. After all, the appellant had admitted there was a gun in the car. So there would have been an inventory search. So whether it was then or later, I would say confidently that the police would have recovered it. I think the problem is, at the time when they entered the car, they really didn't have probable cause. They may have had reasonable suspicion. They didn't have probable cause to believe he was a felon in possession, because they didn't know he was a felon yet. That's correct, Your Honor. Although they did have probable cause to make the traffic stop, because as the In fact, he violated Nevada law. So accordingly, they had probable cause to stop, and that rendered the stop reasonable under the Fourth Amendment. He made a left turn and had two lanes into which he could go, and he chose the one the furthest away? Is that right? That's correct, Your Honor. And that's a violation of Nevada law? It is, Your Honor. It's probably a law that's violated a lot. You're probably right, Your Honor. But I think it's also important to keep in mind that they weren't following him just cavalierly. They were following him because they received information from this off-duty officer that In other words, they had a reason unrelated to any traffic violation? That's correct, Your Honor. So the traffic stop really was largely pretextual, wasn't it? I wouldn't suggest it's pretextual, Your Honor. I mean, if they had seen him make this turn, it's unlikely he would have been arrested for that, absent the domestic violence allegation, right? Well, Your Honor, I think what we do know is that they were following because they believed he may have battered a female, and they did see him make this violation of Nevada law. And I think that's what's before the Court, respectfully. Regarding the line of questioning that may have been — may have exceeded the scope for the justification of the stop, this Court's recent decision in the United States v. Mendez, I would submit, makes the appellant's argument moot. As I imagine Your Honors are aware, in that case, the Court decided that the line of questioning need not be directly related to the reason the car is stopped as long as the questioning does not delay or prolong the encounter between the defendant and law enforcement. Wasn't there a motion to suppress granted here with regard to the responses he gave to the questions? Subsequent questions, yes, Your Honor, but those aren't, I submit, aren't at issue here. And quite honestly, those questions became aware — I became aware of those questions during the suppression hearing and agree that they should have been suppressed because there's no question that the defendant was in custody at that point. He had been handcuffed, if I remember correctly. The question that I believe the appellant is trying to further suppress is the question that was made voluntarily without any real question from the police. When the appellant approached the officers, he said, yes, he had a weapon. And I submit that their reason for attacking that question is based on their argument that it exceeded the scope for why he was stopped. And I submit that the Mendez case represents that that's no longer a basis that warrants suppression of the statement because, in this case, the line of questioning lasted no longer than one minute. In fact, the entire length of the traffic stop lasted no more than a couple of minutes. I would submit that there is no way, based on the facts submitted in this case and in the record, that the questioning prolonged the encounter between the defendant and law enforcement. For that reason, I submit that it's well within the confines of the decision in Mendez in Moot's appellant's argument regarding the — whether these questions exceeded the scope of the traffic stop. And unless there's any other — Kennedy. Does the fact that they — okay, let's accept this premise that they had an answer to the question. They knew that there was a firearm. Does the fact that they knew that the defendant — what became the defendant, that the person who had been stopped acknowledged that there was a firearm, give them justification to go looking inside a case in order to find it? And they weren't looking for a person inside that case. They presumably were looking for the firearm. What was their justification for looking inside the case? Your Honor, the appellant told the officers that the gun was in a black case. As it turned out, the gun wasn't in the black case. That's really my question. Is the knowledge that there's a firearm enough to give them justification to look wherever they have to look to find that firearm? I submit that it's — they could within the confines of the passenger — exceeding up until the passenger compartment of the car, yes. Okay. I think we have your argument well in hand. Thank you for coming in today. Rebuttal. I would submit, Your Honor, that what occurs here is a situation where there's a determination made to go beyond what they really believe is taking place here in terms of — granted, they may have had a right to go into the vehicle based upon the belief that someone might have been injured, based upon the fact that another officer gave them information which they believe may have been correct. It turned out not to be. But what's important here is the car is locked. They have a — they get into the car to see if there's any injured individuals. There isn't anyone else in the car. And I would submit to you, based upon that fact, that that's when the search should stop. If, in fact, there was a concern about weapons or other things within the vehicle, then at that point in time, they're duty-bound to get a warrant at that point in time to try and find out the additional information. Okay. Perfect timing. Thank you both for your arguments. The case just argued will be submitted for decision.
judges: Hawkins, Thomas, Clifton